IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ERIC REDISH | § |  |
|---|---|---|
|  | § |  |
| Plaintiff, | § |  |
|  | § |  |
| VS. | § | NO. 3-07-CV-1065-O |
|  | § |  |
| YELLOW TRANSPORTATION, INC. | § |  |
|  | § |  |
| Defendant. | § |  |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Yellow Transportation, Inc. has filed a motion to compel arbitration and to dismiss or stay this civil rights action brought under 42 U.S.C. § 1981. For the reasons stated herein, the motion should be granted.

I.

Plaintiff Eric Redish, an African-American, worked as a dock supervisor for Yellow Transportation from April 2003 until November 2003. (*See* Plf. Orig. Compl. at 2, ¶ 9). During his seven-month tenure with the company, plaintiff states that he was discriminated and retaliated against on account of his race. (*Id.* at 3, ¶ 16). In particular, plaintiff alleges that African-American and Hispanic employees were required to perform more job duties and given less desirable assignments than similarly situated non-minority workers, that he was subjected to offensive writings and graffiti on bathroom walls and other locations throughout the workplace, that he was harassed, verbally abused, threatened, and shunned by his co-workers, and that he was physically assaulted on at least one occasion. (*See id.* at 4-5, ¶ 18). These incidents ultimately caused plaintiff to leave the company. (*See id.* at 3, ¶ 16).

On June 14, 2007, more than three years after his constructive discharge, plaintiff sued defendant in federal district court. His sole claim is for civil rights violations under 42 U.S.C. § 1981. Defendant now moves to dismiss or stay this case in favor of arbitration. In support of its motion, defendant points to a Dispute Resolution Agreement ("DRA") signed by plaintiff as a condition of his employment. The DRA provides:

> [E]xcept for claims listed below as "Excluded Claims," both [defendant] and [plaintiff] agree to resolve all disputes, claims or controversies arising out of, or related to, [plaintiff's] application for employment, [his] employment, or the cessation of [his] employment with [defendant] that would otherwise require or allow resort to a court or other governmental tribunal ("Employment Claims") exclusively by final and binding arbitration before a neutral arbitrator.

(Def. App. at 001). Among the claims subject to arbitration are "claims of discrimination, harassment or retaliation . . . whether based on local, state or federal laws or regulations, or on tort, contract, or equitable law, or otherwise." (*Id.*). Plaintiff counters that the DRA is unenforceable for a variety of reasons. The issues have been fully briefed by the parties and the motion is ripe for determination.

II.

The Federal Arbitration Act provides, in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The language of this section is mandatory. Where the court finds that the parties agreed to arbitrate a dispute, its role is limited to enforcing that agreement. *See AT&T Technologies,*

*Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986). The decision whether to enforce an arbitration clause involves a two-step inquiry. First, the court must determine whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). The court then must consider whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors*, 105 S.Ct. at 3355; *Hill*, 367 F.3d at 429.

A.

The threshold inquiry is whether plaintiff agreed to arbitrate his section 1981 claim against defendant. In making that determination, the court must decide whether there is a valid agreement to arbitrate and, if so, whether the dispute falls within the scope of that agreement. *See American Heritage Life Insurance Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003), citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Those questions are decided according to state law. *See Hill*, 367 F.3d at 429. "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Id.*, citing *Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 214 (5th Cir. 2003). However, "once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Id.*, citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

1.

Plaintiff maintains that there is no agreement to arbitrate because defendant never signed the DRA. Under Texas law, the absence of a signature on a contract does not necessarily destroy its validity. *See Clifton v. Anthony*, 401 F.Supp.2d 686, 691 (E.D. Tex. 2005), citing *ABB Kraftwerke*

*Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex. App.--Corpus Christi 2003, pet. denied). "As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract." *ABB Kraftwerke Aktiengesellschaft*, 115 S.W.3d at 292; *see also Simmons and Simmons Construction Co. v. Rea*, 286 S.W.2d 415, 419 (Tex. 1955). Here, the DRA contains a signature blank only for the employee. (*See* Def. App. at 002). There is no place for a company representative to sign. This strongly suggests that the parties never intended to require defendant's signature as a condition precedent to their agreement to arbitrate disputes arising out of or related to plaintiff's employment. *Compare Copeland v. KB Home*, No. 3-03-CV-0227-L, 2004 WL 1778949 at *3 (N.D. Tex. Aug. 4, 2004) (no agreement to arbitrate existed where defendant did not initial arbitration provision and the plain, unequivocal language of the agreement required both parties to indicate their intent to submit to binding arbitration by "initialing in the space below and signing this Agreement at the bottom").

2.

Plaintiff further argues that the DRA is not supported by adequate consideration because any promise by defendant to arbitrate is illusory. Under the agreement, "Excluded Claims" are not subject to arbitration. Those claims include:

> (1) claims that [plaintiff] may have for benefits under state employment insurance programs . . .; (2) claims under the National Labor Relations Act that are brought before the National Labor Relations Board; (3) claims that [plaintiff] ha[s] the right to bring as a grievance under a collective bargaining agreement; and (4) claims that [defendant] may have against [plaintiff] for preliminary injunctive relief, such as to prevent [plaintiff] from violating a confidentiality agreement or disclosing trade secrets.

(Def. App. at 001). According to plaintiff, there is no mutuality of obligation because defendant can unilaterally "opt out" of arbitration by casting any claim it may have against him as one for preliminary injunctive relief.

An agreement to arbitrate does not fail for lack of consideration merely because one party reserves the right, under limited circumstances, to seek judicial relief. *In re Alamo Lumber Co.*, 23 S.W.3d 577, 579 (Tex. App.--San Antonio 2000, pet. denied) (mutual promises to arbitrate constitute valid consideration even when arbitration agreement allows the employer, but not the employee, to seek judicial remedies for injunctive or equitable relief); *see also Quinn v. EMC Corp.*, 109 F.Supp.2d 681, 683 (S.D. Tex. 2000). In this case, the DRA does not give defendant *carte blanche* power to disregard the arbitration clause and file suit for any reason. Defendant may resort to litigation only to seek preliminary injunctive relief.[1] Both parties expressly agreed and remain bound to arbitrate "all disputes, claims or controversies arising out of, or related to, [plaintiff's] application for employment, [his] employment, or the cessation of [his] employment with [defendant] that would otherwise require or allow resort to a court or other governmental tribunal." (Def. App. at 001). The mutual promises to arbitrate claims arising out of or related to plaintiff's employment with defendant constitute valid consideration for the DRA. *Alamo Lumber*, 23 S.W.3d at 579.

B.

Having determined that there is a valid agreement to arbitrate, the court must consider whether any statute or policy renders the claims non-arbitrable. Plaintiff offers three reasons why the court should not compel arbitration: (1) the DRA allows for review of the arbitration award by a second arbitrator "according to the law and procedures applicable to appellate review of a civil

---

[1] Likewise, plaintiff is not required to arbitrate any claims he may have for state employment insurance benefits or any grievances under a collective bargaining agreement. (*See* Def. App. at 001).

judgment," rather than the highly deferential standard of review established by the FAA; (2) restrictions on discovery and the fee-splitting arrangement render the arbitration agreement unconscionable; and (3) the one-year limitations period for filing a dispute resolution request is inconsistent with the four-year statute of limitations under 42 U.S.C. § 1981. The court will address each argument in turn.

1.

The DRA provides:

> At either party's written request within fourteen (14) days after issuance of the award, the award shall be subject to affirmation, reversal or modification, following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review of a civil judgment following court trial in the sate in which the arbitration was held.

(Def. App. at 002). Plaintiff contends that this provision runs afoul of the recent decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, ___ U.S. ___, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), because it establishes a broader scope of review than that permitted by the FAA. In *Hall Street*, the Supreme Court made clear that sections 10 and 11 of the FAA provide the exclusive grounds for vacating or modifying an arbitration award.[2] Parties may not contractually agree to expand the scope

---

[2] Section 10 of the FAA provides that a federal district court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

of judicial review to give courts the power to vacate an arbitration award due to "manifest disregard of the law," or for any reasons other than those specified in the statute. *See Hall Street*, 128 S.Ct. at 1404.

Unlike the arbitration agreement in *Hall Street*, the DRA does not attempt to broaden the scope of *judicial review* of an arbitration award. Rather, the provision challenged by plaintiff involves review by a *second arbitrator*. Nothing in *Hall Street* or the FAA prohibits the parties from contractually agreeing to a procedure whereby a second arbitrator reviews an arbitration award using standards of review that are applicable to appeals in civil cases.

2.

Plaintiff also contends that restrictions on discovery and a provision requiring the parties to "split equally" the costs of arbitration render the agreement unconscionable. Under Texas law, unconscionability includes: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *See Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 301 (5th Cir. 2004), *citing In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002), *cert. denied sub nom. Myers v. Halliburton*, 123 S.Ct. 901 (2003). Plaintiff appears to argue substantive unconscionability. As the party seeking to invalidate the arbitration agreement, plaintiff

---

9 U.S.C. § 10(a). Section 11 of the FAA authorizes a federal district court to modify or correct an arbitration award:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

*Id.* § 11.

bears the burden of proof on this issue. *Id.*; *see also Cameron v. National Resort Management Corp.*, No. 3-06-CV-1724-M, 2007 WL 580622 at *1 (N.D. Tex. Feb. 23, 2007).

The court initially observes that the arbitration agreement does not prohibit discovery. Nor does it grant one party greater discovery rights than the other party. Rather, the DRA authorizes the arbitrator to "order such reasonable discovery, consistent with the expedited nature of arbitration, as is necessary to allow adequate presentation of the case." (Def. App. at 001). That plaintiff may not be permitted to conduct full discovery in accordance with the federal rules does not render the arbitration agreement invalid. *Carter*, 362 F.3d at 301; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 1655, 114 L.Ed.2d 26 (1991) ("[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration[.]") (internal quotations omitted).

With respect to the payment of arbitration costs, the DRA provides:

> [Plaintiff] understand[s] that the costs of arbitration and arbitrator fees will be split equally between [defendant] and [plaintiff] unless other express statutory provisions or controlling case law conflict with this allocation and require the payment of costs and fees by [defendant]. If such a conflict exists, the costs of arbitration and the arbitration fees will be paid by [defendant]. Substantive statutory protections or controlling case law shall govern the allocation of awards of attorney's fees and costs.

(Def. App. at 002). A fee-splitting provision may be substantively unconscionable if it results in large arbitration costs that would preclude a litigant from vindicating his federal statutory rights. *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000); *see also In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). In order to avoid arbitration on this ground, plaintiff must provide some specific information of the actual costs that will be incurred. *See Green Tree*, 121 S.Ct. at 522-23; *FirstMerit Bank*, 52 S.W.3d at 756.

Counsel for plaintiff estimates that the cost of arbitration could well exceed $50,000. (*See* Plf. App. at 6, ¶ 7). This estimate is based on counsel's experience in representing employees in six prior arbitrations, three of which proceeded to hearing and resulted in a final award. (*Id.* at 5, ¶ 3). According to counsel, the cost of a three-day arbitration conducted two years ago by Cecilia Morgan, a JAMS arbitrator, was in excess of $28,000. (*Id.* at 6, ¶ 6). In this case, the DRA contemplates review of the arbitration award by a second arbitrator, which counsel believes may double the costs. (*Id.* at 6, ¶ 7). Plaintiff, who currently earns $12,000 a year as a substitute teacher, states that he cannot afford to pay half the costs of arbitration and, if required to do so, he will not be able to prosecute his claim. (*Id.* at 3, ¶ 10).

The court questions whether cost estimates based on a three-day arbitration in another case conducted by a different arbitrator are specific enough to establish the actual costs of *this arbitration*. *See In re MHI Partnership, Ltd.*, No. 14-07-00851-CV, 2008 WL 1839055 at *6 (Tex. App.-- Houston [14th Dist.], Apr. 23, 2008). Nevertheless, the court has little difficulty in concluding that a person who earns only $12,000 a year cannot afford to pay *any* arbitration costs. To require plaintiff to "split equally" the costs of arbitration would effectively deprive him of an adequate forum in which to resolve his federal statutory claim. While this makes the fee-splitting provision unenforceable, it does not invalidate the entire arbitration agreement. *See Jones v. Fujitsu Network Communications, Inc.*, 81 F.Supp.2d 688, 693 (N.D. Tex.1999). Under the DRA:

> In the event any portion of the Agreement is held to be in conflict with a mandatory provision of applicable law, the conflicting portion shall be stricken and the remainder of this Agreement shall be enforced.

(Def. App. at 002). In accordance with this severability clause, the court should invalidate the fee-splitting provision, require defendant to pay the costs of arbitration, and enforce the remainder of the

DRA. *Id.*; *see also Carter v. Countrywide Credit Industries, Inc.*, 189 F.Supp.2d 606, 620 (N.D. Tex. 2002), *appeal dism'd*, 57 Fed. Appx. 212 (5th Cir. 2003).

3.

Finally, plaintiff argues that the DRA is unenforceable because it contains a one-year limitations period for filing a dispute resolution request that is inconsistent with the four-year statute of limitations under 42 U.S.C. § 1981. The DRA provides that:

> [Plaintiff] must file a Dispute Resolution Request Form (OD xxx) by sending it certified mail to Manager, Employee Relations, Yellow Transportation, 10990 Roe Ave., Overland Park, KS 66211, *within one year after the date my claim arose*, or my claim will be waived.

(Def. App. at 001) (emphasis added). It is not clear whether this one-year time limit for mailing a dispute resolution request form to the Employee Relations Department operates as a statute of limitations or, as defendant argues, merely requires that employees give the company prompt notice of their grievances. (*See* Def. Reply at 8). In any event, the interpretation and application of this provision is a question for the arbitrators. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002); *Bowie v. Edison Security Corp.*, No. 3-00-CV-2700-H, 2001 WL 1076128 at *3 (N.D. Tex. Sept. 11, 2001); *Universal Computer Consulting Holding, Inc. v. Hillcrest Ford Lincoln-Mercury, Inc.*, Nos. 14-04-00819-CV & 14-04-01103-CV, 2005 WL 2149508 at *6 (Tex. App.--Houston [14 Dist.], Sept. 8, 2005, no writ).[3]

C.

A district court may dismiss, rather than stay, an action where all issues are properly subject to arbitration. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999); *Alford v. Dean*

---

[3] Even if this one-year period was intended to operate as a statute of limitations on plaintiff's federal civil rights claim, it is subject to the severability clause of the DRA. Thus, the arbitrators may strike this provision without invalidating the remainder of the agreement.

*Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Because the only claim asserted by plaintiff falls within the scope of the DRA, the only possible role a court could have would be to review the arbitration award once the proceedings are concluded. *See Alford*, 975 F.2d at 1164. Under these circumstances, the case should be dismissed rather than stayed.

## RECOMMENDATION

Defendant's motion to compel arbitration [Doc. #11] should be granted. The court should invalidate the fee-splitting provision of the DRA, require defendant to pay the costs of arbitration, and enforce the remainder of the agreement. With those modifications, the case should be dismissed without prejudice in favor of arbitration.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 4, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE